**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEPAN VLADIMIROVICH MAKAROV, | No. 5:26-cv-02744 DSR |
| Petitioner, | |
| v. | **ORDER GRANTING PETITION AND ISSUING WRIT OF HABEAS CORPUS FOR IMMEDIATE RELEASE** |
| TODD BLANCHE, et al., | |
| Respondents. | |

**1.    INTRODUCTION AND PROCEDURAL BACKGROUND**

On May 20, 2026, Stepan Vladimirovich Makarov ("Petitioner"), a noncitizen who has been detained in Immigration and Customs Enforcement ("ICE") custody most recently since February 14, 2026, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") challenging his ongoing detention as violative of, inter alia, his right to due process. See Doc. No. 1. The Petition names as Respondents the Acting United States Attorney General, the Secretary of the Department of Homeland Security, the Acting Director of Immigration and Customs Enforcement ("ICE"), the Director of the Los Angeles Field Office of ICE, and the Warden of the Adelanto detention facility where Petitioner is detained, each in his or her official capacity (collectively "Respondents"). Id.

Concurrently with filing the Petition, Petitioner also voluntarily consented under 28 U.S.C. § 636 to have a Magistrate Judge conduct all further proceedings in

this case, including trial and the entry of judgment.  See Doc. No. 3.  The case became fully consented three days later pursuant to the United States Attorney's Office's General Consent to Disposition by Magistrate Judge in Immigration Habeas Cases.  See General Order 26-05 at Ex. "A" (Doc. No. 5); see also Doc. No. 6.

On May 21, 2026, the Clerk of Court served a copy of the Petition on Respondents along with a Notice of General Order 26-05 and Briefing Schedule.  See Doc. 5.  On May 28, 2026, Respondents filed their Answer, in which they stated "Respondents are not presenting an opposition argument at this time," and "[s]hould the Court enter relief, judgment may be entered, and consistent with the 'expeditious resolution' of § 2241 Immigration Petitions required by the General Order, no more filings or proceedings will be necessary in this matter."  See Doc. No. 8.

Having carefully considered the unopposed Petition, the Court GRANTS the Petition and issues a Writ of Habeas Corpus ordering Petitioner's immediate release from immigration custody.

## 2.    FACTUAL BACKGROUND

The Court sets forth a summary of the relevant factual background based on the facts alleged in the Petition.  Respondents had the opportunity to dispute the facts alleged in the Petition, but declined to do so.  See Answer (Doc. No. 8).  Accordingly, the facts alleged in the Petition are undisputed and have been conceded by Respondents.  See C.D. Cal. L.R. 7-12.

Petitioner was born in the former Soviet Union, in what is now Uzbekistan.  See Pet. at ¶ 25.  In or around February 1999, Petitioner entered the United States "through the San Francisco International Airport as a refugee[.]"  Id. at ¶ 46.  "Petitioner was granted lawful permanent resident status, and resided lawfully in the United States for approximately twenty years before losing such status following criminal proceedings."  Id. at ¶ 47.  In January 2012, Petitioner was convicted of burglary.  Id. at ¶ 49.  Following the completion of his prison sentence

2

in or around June 2014, Petitioner was transferred to ICE custody. Id. at ¶ 50. The Department of Homeland Security ("DHS") subsequently "revoked his lawful permanent resident status and an Immigration Judge entered a final order of removal against him." Id. "Petitioner's order of removal became administratively final in or about June 2014." Id. at ¶¶ 5, 76.

Thereafter, DHS attempted to remove Petitioner to Uzbekistan. Uzbekistan refused the issue the requisite travel documents to effectuate removal, however. Id. at ¶ 51. After three months in ICE custody, Petitioner was released from detention under terms of supervision because removal could not be effectuated. Id. at ¶¶ 7, 52-53. In March 2020, ICE re-detained Petitioner in an effort to effectuate his removal. Id. at ¶ 8. Petitioner was detained for three more months, but again Uzbekistan refused to provide the necessary travel documentation and Petitioner was released from ICE custody in June 2020. Id.

Sometime thereafter, Petitioner was convicted of "grant theft and vandalism" for which he served a criminal sentence of 12 months. Id. at ¶ 9. Upon his release from that sentence on February 14, 2026, Petitioner was detained for a third time by ICE and was informed by an ICE Officer that "removal was unlikely" in light of the two prior denials from Uzbekistan, but that "DHA was nevertheless required to submit another request." Id. at ¶¶ 10, 56-57.

As of the filing of the Petition on May 20, 2026, Uzbekistan had not responded to this most recent request. Id. at ¶ 59. Respondents have not identified an alternative county willing to accept Petitioner, nor have they provided him with evidence establishing that there is a significant likelihood of his removal in the foreseeable future. Id. at ¶ 61.

**3.     DISCUSSION**

Petitioner argues that pursuant to Zadvydas v. Davis, 533 U.S. 678 (2001), he is entitled to immediate release because there is no significant likelihood that his removal from the United States will occur in the reasonably foreseeable future.

3

The primary federal habeas corpus statute, 28 U.S.C. § 2241, authorizes District Courts to grant writs of habeas corpus where the petitioner is, inter alia, "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The law is clear that § 2241 "remain[s] available as a forum for statutory and constitutional challenges to post-removal-period detention." Zadvydas, 533 U.S. at 688.

Section 241 of the Immigration and Nationality Act, which is codified as 8 U.S.C. § 1231, sets forth the government's authority to detain noncitizens with a final order of removal. Under that section, "when [a noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days[.]" 8 U.S.C. § 1231(a)(1)(A). During this 90-day removal period, the Attorney General is required to detain the noncitizen for the purpose of effectuating the noncitizen's removal. See § 1231(a)(2)(A). When removal is not completed by that time, certain categories of removable noncitizens "may be detained beyond the removal period[.]" § 1231(a)(6).

Although § 1231(a)(6) does not specify a time limit on the length of such detention, in Zadvydas, the Supreme Court held that the post-removal-period detention scheme contains "an implicit 'reasonable time' limitation." 533 U.S. at 682. That is, "the statute, read in light of the Constitution's demands, limits [a noncitizen]'s post-removal-period detention to a period reasonably necessary to bring about that [noncitizen]'s removal from the United States. It does not permit indefinite detention." Id. at 689. The Court reasoned that "[a] statute permitting indefinite detention of [a] [noncitizen] would raise a serious constitutional problem," because "[t]he Fifth Amendment's Due Process Clause forbids the Government to 'depriv[e]' any 'person ... of ... liberty ... without due process of law.'" Id. at 690. Indeed, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Id. The Court observed that the first justification for

4

post-removal-period detention—risk of flight—is "weak or nonexistent where removal seems a remote possibility at best." Id. As for the second justification—protecting the community—the Court observed that it has "upheld preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections." Id. at 691. Where "preventive detention is of potentially indefinite duration," the Court has "demanded that the dangerousness rationale be accompanied by some other special circumstance ... that helps to create the danger." Id.

To determine the legality of post-removal detention, the Supreme Court directed courts to consider "whether the detention in question exceeds a period reasonably necessary to secure removal," or in other words, whether there is a "significant likelihood of removal in the reasonably foreseeable future." Id. at 699, 701. The Court held that the "presumptively reasonable" period of detention is six months. Id. at 701. A Petitioner "bear[s] the initial burden of providing 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.' " Trinh v. Homan, 466 F. Supp. 3d 1077, 1092 (C.D. Cal. 2020) (quoting Zadvydas, 533 U.S. at 701). "Once that initial showing is made, the burden shifts to the Government to respond with evidence sufficient to rebut it." Id. "Once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute" and the noncitizen's "release may and should be conditioned on any form of the various forms of supervised release that are appropriate in the circumstances." Zadvydas, 533 U.S. at 699-700.

The Court construes Respondent's categorical declining to respond to the merits of the Petition as consent to granting the relief requested. See Local Civil Rule 7-12; see also Soleimani v. Larose, No. 25-CV-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting habeas petition where government's response to the petition failed to respond to numerous claims raised in the petition, including a Fifth Amendment due process claim); Singh v. Chiang,

5

No. ED CV 25-3024 FMO (SP), 2025 WL 4058328, at *4 (C.D. Cal. Dec. 15, 2025) (construing government's failure to oppose argument raised by habeas petitioner as a concession).  Moreover, Petitioner has been detained long past the 90-day period of mandatory detention.  In fact, Petitioner has now gone through three 90-day periods of detention since his final order of removal, and Respondents still have been unable to remove him.  Thus, the Zadvydas framework applies.

Petitioner has met his burden of showing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."  See Zadvydas, 533 U.S. at 701.  Uzbekistan has now on at least three occasions – in 2014, in 2020, and now in 2026 – refused to issue the necessary travel documents for Petitioner.  See Pet. at ¶¶ 6-8, 57.  Respondents have also not identified an alternative country willing to accept Petitioner.  Id. at ¶ 61.  The burden thus shifts to Respondents to "rebut" Petitioner's showing.  See Zadvydas, 533 U.S. at 701.  Respondents, however, do not present any arguments in opposition to Petitioner's factual or legal contentions.  See generally Doc. No. 8.  It is thus undisputed that there is no likelihood of Petitioner's removal in the reasonable future, and thus Petitioner's continued detention is unreasonable.  See e.g., Hong v. Bondi, No. 2:26-cv-00265-CDS-BNW, 2026 WL 897334 (D. Nev. Apr. 1, 2026) (granting release in unopposed habeas petition under Zadvydas when non-likelihood of removal was undisputed); Ly v. Sec'y of Dep't of Homeland Sec., No. 5:26-cv-01603-SSC, 2026 WL 1104325 (C.D. Cal. Apr. 17, 2026); Jalili v. Semaia, No. 5:26-CV-01703-MBK, 2026 WL 1084739 (C.D. Cal. Apr. 16, 2026); Guadran v. Mullin, No. 5:26-cv-01862-BFM, 2026 WL 1182198 (C.D. Cal. Apr. 23, 2026).

Therefore, pursuant to Zadydas, Petitioner's prolonged detention awaiting removal renders him "in custody in violation of the Constitution or laws or treaties of the United States."  A Writ of Habeas Corpus under 28 U.S.C. § 2241 ordering his immediate release, subject to supervision as required under 8 U.S.C. § 1231 (a)(3), is appropriate.

6

**4.     CONCLUSION**

For the foregoing reasons, the Court orders as follows

1.  The Petition for Writ of Habeas Corpus (Doc. No. 1) is **GRANTED**.  A Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 is hereby issued. Respondents, their officers, agents, servants, employees, attorneys, and other persons who are in active concert or participation with Respondents shall immediately release Petitioner **STEPAN VLADIMIROVICH MAKAROV** from detention on the same conditions and/or terms of supervision in effect prior to his February 2026 re-detention.

2.  Respondents are to file a Notice of Release within three days of the date of this Order, confirming that they have released Petitioner.

IT IS SO ORDERED.

DATED: June 10, 2026     _____

HON. DANIEL S. ROBERTS
UNITED STATES MAGISTRATE JUDGE